IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARCUS ALFORD**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:12cv1537 |
| | ) | **Electronic Filing** |
| **CAROLYN W. COLVIN**, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

December 19, 2013

I.    **INTRODUCTION**

Plaintiff Marcus Alford ("Alford") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f]. The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the record has been developed at the administrative level. In addition, Alford moves for the appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1). ECF No. 4. For the reasons that follow, the motion requesting the appointment of counsel will be denied. The Commissioner's motion for summary judgment (*ECF No. 12*) will be denied, and Alford's motion for summary judgment (*ECF No. 9*) will be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's decision, and a remand for

1

further administrative proceedings. The decision of the Commissioner will be vacated, and the case will be remanded for further consideration of Alford's application for SSI benefits.

## II. PROCEDURAL HISTORY

Alford protectively applied for SSI benefits on December 7, 2009, alleging that he had become "disabled" on September 1, 2006. R. at 124, 133. Pennsylvania's Bureau of Disability Determination ("Bureau") denied the application on June 24, 2010. R. at 62. Alford responded on July 14, 2010, by filing a request for an administrative hearing. R. at 68-70. On August 9, 2011, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge ("ALJ") Lamar W. Davis. R. at 31. Alford, who was represented by counsel, appeared and testified at the hearing. R. at 34-47. Samuel E. Edelmann ("Edelmann"), an impartial vocational expert, provided testimony about the expectations of employers existing in the national economy. R. at 48-51. In a decision dated September 9, 2011, the ALJ determined that Alford was not "disabled" within the meaning of the Act. R. at 10-25.

On October 1, 2011, Alford sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. R. at 7. The Appeals Council denied the request for review on September 7, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. R. at 1. Alford commenced this action on October 23, 2012, seeking judicial review of the Commissioner's decision. ECF Nos. 1-3. On November 9, 2012, Alford moved for the appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1). ECF No. 4. Alford and the Commissioner filed motions for summary judgment on January 30, 2013, and March 22, 2013, respectively. ECF Nos. 9 & 12. All three pending motions will be addressed in this memorandum opinion.

## III. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or

3

her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

4

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

### IV. THE ALJ'S DECISION

In his decision, the ALJ determined that Alford had not engaged in substantial gainful activity subsequent to the date of his application. R. at 15. Alford was found to be suffering from a back disorder, degenerative joint disease of the left knee, depression, and gastroesophageal reflux disorder ("GERD"). R. at 15. His back disorder, degenerative joint disease and depression were deemed to be "severe" under the Commissioner's regulations. R. at

5

15; 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Alford's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 15-17.

In accordance with 20 C.F.R. § 416.945, the ALJ assessed Alford's "residual functional capacity"[1] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he would require a sit/stand option at his discretion. He would be capable of no more than incidental postural changes such as climbing, balancing, stooping, kneeling, crouching and crawling and he would be precluded from working around hazards such as heights or dangerous machinery. The claimant would be relegated to performing simple, routine, repetitive tasks involving no independent judgment or discretion, no piecework production rate pace and no interaction with the general public.

R. at 17. Alford had "past relevant work"[2] experience as a sandwich maker. R. at 24. Edelmann classified that position as an "unskilled"[3] job at the "light"[4] level of exertion. R. at 48. In

---

[1] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).
[2] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.
[3] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).
[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in

6

response to a hypothetical question reflecting the ALJ's residual functional capacity assessment, Edelmann testified that the described individual could not perform the duties of Alford's prior position. R. at 48. Since Alford's work as a sandwich maker had involved interaction with members of the general public, it was ultimately determined that he could not return to his past relevant work. R. at 24.

Alford was born on June 10, 1983, making him twenty-six years old on the date of his application and twenty-eight years old on the date of the ALJ's decision. R. at 34. He was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. § 416.963(c). Alford had a high school education and an ability to communicate in English. R. at 137, 139; 20 C.F.R. § 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Alford could work as an assembly worker, a packer, or a sorter. R. at 24. Edelmann's testimony established that those jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B).[5] R. at 49-51.

## V. DISCUSSION

### A. The Motion to Appoint Counsel

Although Alford was represented by counsel during the administrative proceedings, he commenced this action on a *pro se* basis. ECF No. 3. He moves for the appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1), which provides that "[t]he court may request an attorney to

---

this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[5] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

represent any person unable to afford counsel." ECF No. 4. The Supreme Court has held that this statutory language "does not authorize the federal courts to make coercive appointments of counsel." *Mallard v. U.S. District Court for the Southern District of Iowa*, 490 U.S. 296, 310, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989). Consequently, the statutory provision invoked by Alford does not authorize this Court to "require an unwilling attorney to represent" him. *Id.* at 298. At most, the Court can "request" that a particular attorney act as Alford's advocate. *Id.* at 301.

In support of his motion, Alford asserts that he is presently incarcerated and unable to litigate this case on his own. ECF No. 4. When the plaintiff is a prisoner, the restraints placed upon him or her must be considered in determining whether the appointment of counsel is appropriate. *Tabron v. Grace*, 6 F.3d 147, 156 (3d Cir. 1993). Under the present circumstances, however, the Court's review is limited to the evidence that was before the ALJ at the time of his decision. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 360 (3d Cir. 2011); *Matthews v. Apfel*, 239 F.3d 589, 592-595 (3d Cir. 2001). There is no need for further development of the factual record. The Court need only consider "the pleadings and transcript of the record" in order to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The resolution of the pending motions for summary judgment will terminate this action regardless of whether the Commissioner's decision is affirmed, modified or reversed and irrespective of whether a remand is necessary. *Shalala v. Schaefer*, 509 U.S. 292, 299, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993).

Alford's ability to present his case is "a significant factor that must be considered in determining whether to appoint counsel." *Tabron*, 6 F.3d at 156. In his two-page brief, Alford

8

advances coherent arguments akin to those typically raised by attorneys representing Social Security disability claimants. ECF No. 10 at 1-2. Since Alford's arguments "have been presented with care and diligence," the appointment of counsel is unnecessary. *Mackey v. DiCaprio*, 312 F.Supp.2d 580, 582 (S.D.N.Y. 2004). The arguments advanced by Alford are sufficient to entitle him to relief. Given that this action will be terminated when the order vacating the Commissioner's decision and remanding the case is entered, Alford's motion requesting the appointment of counsel will become moot in any event. *Schaefer*, 509 U.S. at 299. For these reasons, that motion will be denied.

### B. The Cross-Motions for Summary Judgment

### 1. The Evidentiary Record

Alford was incarcerated between June 2004 and November 2009.[6] R. at 36-37, 139. He testified that he had not suffered from health problems prior to his term of imprisonment.[7] R. at 36. At some point in 2006, Alford began to experience pain in his lower back and left leg. R. at 257. His incarceration evidently compromised his ability to seek appropriate treatment for his impairments. R. at 257. He protectively applied for SSI benefits shortly after his release from prison. R. at 124, 133.

Dr. Paul S. Lieber, a pain specialist, examined Alford on April 27, 2010. R. at 214-216. Alford complained of worsening back and leg pain whenever he was in a standing position. R. at 214. He was unable to fully extend his left knee. R. at 215. Dr. Lieber observed that Alford's "lumbar flexibility appeared to be restricted." R. at 215. It was recommended that Alford undergo diagnostic studies to ascertain the precise nature of his impairments. R. at 216.

---

[6] Alford was apparently sentenced for offenses related to the possession and delivery of illegal drugs. R. at 37.
[7] The documentary record suggests that Alford's impairments may have been partially attributable to injuries that he had sustained as a high school athlete. R. at 214.

Magnetic resonance imaging ("MRI") scans performed on May 6, 2010, detected the presence of abnormalities in Alford's left knee and lumbar spine. R. at 223-226.

On May 10, 2010, Dr. Richard A. Rydze performed a consultative physical examination of Alford in connection with his application for SSI benefits. R. at 202-210. After completing the examination, Dr. Rydze reported that Alford could sit for only four hours, and stand or walk for only one to two hours, during the course of an eight-hour workday. R. at 207. Dr. Rydze indicated that Alford could frequently lift or carry objects weighing up to ten pounds and occasionally lift or carry objects weighing up to twenty pounds. R. at 207. Alford was deemed to be precluded from balancing or climbing and limited to only occasional bending, kneeling, stooping and crouching. R. at 208. Dr. Rydze further asserted that Alford needed to avoid heights, moving machinery, temperature extremes and humidity. R. at 208.

Alford returned to Dr. Lieber's office on May 25, 2010. R. at 212-213. Dr. Lieber reported that, on examination, Alford's "left Achilles tendon reflex appeared to be absent." R. at 213. It was determined that Alford had a herniated disc in his lumbar spine. R. at 213. Dr. Lieber recommended that Alford be evaluated by an orthopedic surgeon. R. at 213.

On June 11, 2010, Alford was examined by Dr. Brian Klatt. R. at 255-256. Alford complained of weakness in his left leg and shortness of breath whenever he had to walk up a flight of stairs. R. at 255. Dr. Klatt suggested that the weakness and pain in Alford's left leg were being caused by "[m]ultiple lumbar herniations." R. at 255. It was noted that Alford's back condition "might require surgical intervention." R. at 255.

Dr. James Vizza, a non-examining psychological consultant, opined on June 14, 2010, that Alford was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment." R. at 231. Discussing the medically

determinable impairment of major depressive disorder, Dr. Vizza stated that Alford "could be expected to complete a normal workday without exacerbation of psychological symptoms." R. at 231. Alford's subjective complaints pertaining to his mental impairments were deemed to be only "partially credible." R. at 231.

Dr. Joon Lee examined Alford on June 17, 2010. R. at 257-258. It was noted that Alford's symptoms were "pretty severe in the left anterior thigh and left lateral calf," and that they tended to get worse when he was walking. R. at 257. Surgical intervention was recommended. R. at 257. Alford was advised that he would always have some chronic pain in his back and leg. R. at 257. Dr. Lee observed that "permanent nerve damage" had resulted from Alford's inability to obtain appropriate treatment during the previous four years. R. at 257. Alford was told that surgery would most likely decrease the severity of his pain by only sixty to seventy percent. R. at 257. He expressed a desire to move forward with surgical intervention. R. at 258.

Dion Shively ("Shively"), an adjudicator working for the Bureau, determined on June 24, 2010, that Alford could engage in "light" work activities involving only occasional postural maneuvers. R. at 53-59. Shively described Dr. Rydze's examination report as "an overestimate of the severity of [Alford's] functional restrictions." R. at 58. The findings made by Shively resulted in the administrative denial of Alford's claim. R. at 62. Under the Commissioner's regulations, however, those findings did not constitute "evidence" of Alford's ability to work. 20 C.F.R. § 416.927(e)(1)(i).

Dr. Lee surgically repaired the herniated discs in Alford's back on July 7, 2010. R. at 277-279. Three weeks later, Alford was able to ambulate without the assistance of a cane or brace. R. at 308. He was instructed not to engage in excessive twisting or bending and to refrain

from lifting objects weighing more than ten to fifteen pounds. R. at 308. Dr. Lee suggested that physical therapy sessions should begin within six to eight weeks. R. at 308. On September 17, 2010, Alford was told that the time for physical therapy had arrived. R. at 309. Three months later, Dr. Volker Musahl recommended that Alford's knee impairment be treated "nonoperatively with physical therapy." R. at 392.

Dr. Edward Heres evaluated Alford on February 16, 2011. R. at 385-386. On that occasion, Alford stated that his symptoms were less apparent when he was moving around, and that his pain tended to worsen when he was lying down. R. at 385. A treatment regimen consisting of intensive pain rehabilitation, physical therapy and occupational therapy was prescribed to alleviate his symptoms. R. at 386.

On May 9, 2011, Dr. Heres administered an epidural steroid injection to Alford's back. R. at 366-368. Two weeks later, Dr. Musahl observed that Alford's symptoms remained "unchanged" because he had not undergone physical therapy or sought treatment at a pain clinic. R. at 391. In light of Alford's failure to comply with the relevant treatment protocol, Dr. Musahl found it difficult to make additional recommendations. R. at 391.

Dr. Heres detailed Alford's alleged physical limitations in a "physical residual functional capacity questionnaire" completed on June 2, 2011. R. at 315-318. Alford was deemed to be capable of walking only one to two city blocks before having to rest. R. at 316. Dr. Heres indicated that Alford could sit for only four hours, and stand or walk for "less than" two hours, during the course of an eight-hour workday. R. at 317. In addition, Dr. Heres reported that Alford needed to alternate between sitting and standing every thirty minutes, and that he needed to walk for roughly two minutes out of every hour. R. at 316-317.

At the hearing, Alford testified that he had sustained his injuries during his period of incarceration. R. at 37-38. He stated that his condition had deteriorated significantly between his application date and his back surgery. R. at 43. Alford further asserted that he needed to rotate from sitting, standing and lying positions every twenty to thirty minutes. R. at 44-45. The ALJ observed that Alford was "leaning a little bit forward" and did not appear to be "entirely comfortable." R. at 41. When questioned by Alford's counsel, Edelmann testified that no jobs existed in the national economy for an individual who could sit, stand and walk for a total of only six hours per day. R. at 51.

The ALJ partially credited Alford's testimony by affording him the option to alternate between sitting and standing at his discretion. R. at 17. The sitting, standing and walking limitations described by Dr. Rydze and Dr. Heres were accorded "little weight." R. at 23. The ALJ observed that Alford was scheduled to attended classes at a community college "for at least four hours per night." R. at 23. Factoring in commuting time and other activities of daily living, the ALJ surmised that Alford could sit, stand and walk "for the equivalent of an eight-hour workday." R. at 23.

### 2. Alford's Argument Concerning the ALJ's Step-Three Finding

The Listing of Impairments describes impairments which render a claimant *per se* disabled without regard to his or her age, education, or past work experience. *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). In order to qualify as *per se* disabled under the Commissioner's regulations, a claimant must demonstrate that his or her impairment (or combination of impairments) either "matches" a Listing or is "equivalent" to a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). An impairment "matches" a Listing only if it satisfies

*all* of the relevant medical criteria. *Id.* at 530. An impairment is "equivalent" to a Listed Impairment only if it is supported by medical findings equal in severity to *all* of the criteria applicable to the most similar Listing. *Id.* at 531. The claimant bears the burden of presenting evidence to support his or her allegation of *per se* disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

Alford maintains that the ALJ erred in declining to make a finding of *per se* disability at the third step of the sequential evaluation process. ECF No. 10 at 1. It was the ALJ's responsibility to specify the particular Listings under consideration and provide sufficient analysis of the relevant issues to facilitate meaningful judicial review. *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 119-120 (3d Cir. 2000). He fulfilled those obligations. R. at 15-17. The ALJ was not required to "use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505. Alford does not identify evidence suggesting that he was *per se* disabled under the Listings identified by the ALJ or specify a Listing that was improperly ignored. ECF No. 10 at 1. Under these circumstances, the Court has no reason to disturb the ALJ's finding at the third step. *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 93 (3d Cir. 2007).

### 3. Alford's Argument Concerning the ALJ's Residual Functional Capacity Assessment

Alford argues that the sitting, standing and walking limitations described in his testimony and verified by Dr. Rydze and Dr. Heres should have been fully credited by the ALJ. ECF No. 10 at 1-2. Opinions expressed by treating and examining physicians do not bind the Commissioner on the issue of a claimant's residual functional capacity. *Brown v. Astrue*, 649 F.3d 193, 196, n. 2 (3d Cir. 2011). Such opinions, however, may only be rejected on the basis of "contradictory medical evidence." *Brownawell v. Commissioner of Social Security*, 554 F.3d

14

352, 355 (3d Cir. 2008). An administrative law judge "is not free to employ [his or] her own expertise against that of a physician who presents competent medical evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). The rejection of "competent" medical assessments cannot be premised on an administrative law judge's "own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

The Commissioner contends that the ALJ gave "appropriate weight" to the "objective findings" of Dr. Rydze and Dr. Heres while rejecting their "unsupported findings" concerning Alford's functional limitations. ECF No. 13 at 14. That argument contravenes the decision of the United States Court of Appeals for the Third Circuit in *Ferguson v. Schweiker*, 765 F.2d 31 (3d Cir. 1985). In *Ferguson*, the Court of Appeals declared that an administrative law judge had "acted improperly" by independently concluding that the limitations described by a treating physician were "contrary to the objective medical evidence contained in the [claimant's] file." *Ferguson*, 765 F.2d at 37. Speaking through Judge Gibbons, the Court of Appeals explained that an administrative law judge who believed a medical report to be "conclusory or unclear" could not reject that report without securing "additional evidence from another physician." *Id.* In this case, the ALJ improperly relied on his own evaluation of the "objective findings" in order to reject assessments provided by both a treating physician and a consultative examiner. R. at 23-24. Since no physician found Alford to be capable of performing the range of work reflected in the ALJ's residual functional capacity assessment, that assessment is not supported by substantial evidence. *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986).

### 4. The Proper Remedy

The statutory provision authorizing the commencement of this action provides the Court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming,

15

modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "An immediate award of benefits is appropriate only when the evidentiary record has been fully developed, and when the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010). That standard is not satisfied in this case.

Although Alford applied for SSI benefits on December 7, 2009, the testimonial record suggests that his condition may have deteriorated between that date and his July 7, 2010, surgical procedure. R. at 43. Even if he was "disabled" at some point during the relevant period of time, it is not clear whether the onset of his "disability" occurred as early as his application date. Dr. Rydze did not examine Alford until May 10, 2010, which was only a few weeks before his surgery. R. at 202-210.

Shortly after completing the operation on Alford's back, Dr. Lee advised that Alford would be instructed to begin a physical therapy program within six to eight weeks. R. at 208. On September 17, 2010, Alford was told that the time for physical therapy had arrived. R. at 309. At that time, Dr. Lee anticipated that Alford could potentially be discharged within three months. R. at 309. Nonetheless, Dr. Musahl reported on May 26, 2011, that Alford's symptoms had remained "unchanged" because of his failure to attend physical therapy sessions. R. at 391. If physical therapy would have restored Alford's ability to work, his failure to adhere to the prescribed treatment regimen could have justified a denial of his application for benefits. 20 C.F.R. § 416.930(a)-(b). It is worth noting that Dr. Heres completed his "physical residual functional capacity questionnaire" just one week after Alford's appointment with Dr. Musahl. R. at 315-318, 391.

16

A claimant attempting to secure benefits under the Act must demonstrate that both his or her medically determinable impairment (or combination of impairments) and his or her inability to work have lasted (or are expected to last) for the statutory twelve-month period. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). Alford testified that he had been able to "do a lot more" prior to the 2010 deterioration in his medical condition. R. at 43. He evidently failed to comply with the recommendations of his treating physicians in the aftermath of his surgery. R. at 391. Assuming *arguendo* that Alford's impairments rendered him unable to work at some point during the middle of 2010, it is not clear whether that inability would have persisted long enough to satisfy the Act's twelve-month durational requirement if he had followed through with the recommended course of physical therapy. *Walton*, 535 U.S. at 214-219. Since there are unresolved factual issues that may turn out to be dispositive, the proper remedy is a remand for further proceedings rather than a judicially-ordered award of benefits. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505-507 (3d Cir. 2009).

## VI. CONCLUSION

Alford's motion requesting the appointment of counsel (*ECF No. 4*) and the Commissioner's motion for summary judgment (*ECF No. 12*) will be denied. Alford's motion for summary judgment (*ECF No. 9*) will be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's administrative decision, and a remand for further proceedings. The Commissioner's "final decision" in this case will be vacated, and the case will be remanded for further consideration of Alford's application for SSI benefits. The Commissioner must "reopen and fully develop the record" before reaching a determination. *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800 (3d Cir. 2010). That is especially true if Alford continues to proceed without

the assistance of counsel. *Reefer v. Barnhart*, 326 F.3d 376, 380-381 (3d Cir. 2003). No opinion is expressed as to whether Alford was statutorily "disabled" during the relevant period of time, or as to whether he had a "good reason" for declining to pursue the recommended course of physical therapy. 20 C.F.R. § 416.930(b). Those issues should be addressed by the Commissioner in the first instance.

By the Court:

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc: Christy Wiegand
Assistant United States Attorney

(*Via CM/ECF Electronic Mail*)

Marcus Alford
5119 Langhorn St
Pittsburgh, PA 15207

(*Via Regular U. S. Mail*)